**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

LAWRENCE R. BAYLESS, Jr., )
 )
          **Plaintiff,** )
 ) CIVIL ACTION
v. )
 ) No. 12-2432-JWL
CAROLYN W. COLVIN,[1] )
Acting Commissioner of Social Security, )
 )
          **Defendant.** )
_____ )

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a partially favorable decision of the Commissioner of Social Security (hereinafter Commissioner) finding Plaintiff disabled and eligible for Social Security Disability (SSD) benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act), beginning August 29, 2009, but not before that date. (R. 30-38). Finding error in the Commissioner's evaluation of the medical opinions, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

I.  **Background**

Plaintiff applied for SSD, alleging disability beginning June 30, 2005. (R. 30). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits before August 29, 2009. He alleges the Administrative Law Judge (ALJ) erred in evaluating the medical opinions of his treating physician and of a consultative examiner; erred in evaluating the credibility of his allegations of symptoms; and improperly relied upon the testimony of the vocational expert.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ erred in evaluating the medical opinions. Therefore, the court cannot determine whether the ALJ properly relied upon the vocational expert testimony, and it will not address the ALJ's evaluation of the credibility of Plaintiff's allegations of symptoms. Plaintiff may make his arguments in regard to those issues to the Commissioner on remand.

## II.     Evaluation of the Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2). Such opinions may not be ignored and, unless a treating

source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. § 404.1527(d); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2013). A physician who has treated a patient frequently over an extended period of time (a treating source)[2] is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

---

[2]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.
"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

5

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2013) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a

6

whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). However, a court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

Plaintiff claims that the ALJ erroneously rejected the treating source opinion of Dr. Appl and the nontreating source opinion of Dr. Spencer and erroneously accorded the "greatest weight" to the nonexamining source opinion of Dr. Goering. She argues that the record evidence does not support the rationale of the ALJ and that the reasons given by the ALJ are in certain respects nonsensical. The Commissioner argues that the ALJ properly found that the opinions of Dr. Appl and Dr. Spencer were "too restrictive in light of the treating records and other evidence of record." (Comm'r Br. 15). The court is

7

compelled to find that the decision is not sufficiently specific to make clear the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. Thus, it concludes that the ALJ has not provided specific, legitimate reasons for rejecting the opinion of Plaintiff's treating physician, Dr. Appl, and remand is necessary for the Commissioner to properly evaluate the medical opinions in accordance with the legal standard presented here.

The court notes that the ALJ addressed and evaluated the medical opinions in three sections of the decision at issue here, and it quotes and considers each of those discussions in its entirety:

> The undersigned considered the opinion of Emil Goering, M.D. at Exhibit 1F, finding the claimant is capable of a residual functional capacity consistent with the one specified above herein. Dr. Goering was afforded the opportunity to review the evidence and noted the following in support of his opinion. The claimant has a remote history of neck surgery, and recent diagnosis of diabetes. The claimant was also diagnosed with sleep apnea in April 2005, but the records indicate that he recently declined a CPAP or a new sleep study. Otherwise, he has minimal medical care or treatment.
>
> Dr. Madden cited the consultative examination of findings from May 2006 in his opinion. Specifically, he notes that lumbar x-ray results showed only mild spondylolysis at L5-Sl with all proximal levels unremarkable w shallow marginal osteophytes, pedicles intact. Reported intermittent numbness but no pain in his feet, localized w no radiation. The claimant's weight was 310 pounds and standing at 58 inches tall. The claimant's effort on examination was rated as "fair" by the doctor. The claimant exhibited some difficulty feeling a monofilament on distal soles of his feet, but cranial nerves were otherwise intact, sensation to touch was grossly intact, and reflexes were 2/4 and equal. Babinsky and Romberg tests were negative. Grip was 40 pounds on the left and 60 pounds on the right with dexterity preserved. Range of motion of the claimant's ankles, hips, knees wrist and elbows were normal. Seated straight leg raise was 90 degrees bilaterally. Muscle strength was normal at 5/5 in all extremities. Stance and gait were

8

> also normal and the claimant did not have any trouble with any orthopedic maneuvers.
>
> The claimant's allegations are partially credible but he gave only fair effort on exam and has declined CPAP treatment. He reports no problems with personal care. He is morbidly obese but diabetes has recent onset and functional exam was essentially normal w some decreased neck motion. X-ray and exam do not show significant impairment other than obesity but he has a diagnosis of sleep apnea which coincides with the obesity.
>
> The credibility of the functional limitations is questionable since he continues to drive and operate potentially dangerous riding lawn mower. The objective medical evidence indicates he is capable of medium work as indicated by this RFC but he was afforded the benefit of the doubt and restricted heights and hazards including operating a motor vehicle due to the possibility of alleged sleep apnea related problems. (Exhibit 1F /9-16) The undersigned finds this opinion persuasive in light of the other evidence of record, or lack thereof.

(R.34).

The record here contains two "Physical Residual Functional Capacity Assessment" (Physical RFC Assessment) forms SSA 4734-BK. (R. 197-203, 205-12). Both forms are contained within Exhibit 1F. The first consists of Exhibit 1F/1-7, and the second consists of Exhibit 1F/9-16. The Social Security Administration's Physical RFC Assessment form consists of 8 pages, and the signature of the individual completing the form appears on page 8 of the form. In the record here, the first Physical RFC Assessment form is missing page 8. The record simply does not contain a page numbered "204," and Exhibit 1F does not contain a page numbered "1F-8." This is the page which should contain the signature block of the first Physical RFC Assessment form in the record. The second

Physical RFC Assessment form (R. 205-12), (Ex. 1F/9-16) is signed by Dr. Goering, and constitutes Dr. Goering's opinion as discussed by the ALJ in the decision. (R. 36).

The court does not know who prepared the first Physical RFC Assessment form, as the signature page is not in the record. In the first four paragraphs quoted above, the ALJ discussed Dr. Goering's opinion and Dr. Madden's opinion. (R. 34). Thus, it is possible that the first Physical RFC Assessment form was completed by Dr. Madden, and is Dr. Madden's medical opinion. However, on 10/05/2006 the case was referred to Dr. Goering on a "Request for Medical Advice" for a Physical RFC assessment on reconsideration, noting that on the initial consideration the claim "was denied with a medium RFC by an SDM." (R. 213) (Ex. 1F-17). There is a substantial line of cases holding that an "SDM," a single decisionmaker, is not an acceptable medical source and his RFC assessment is not worthy of any weight as a medical opinion in an ALJ's analysis. I.e., Dewey v. Astrue, 509 F.3d 447, 449-50 (8th Cir. 2007); Kennedy v. Astrue, Civ. A. No. 09-00449-B, 2010 WL 1643248, *8 (S. D. Ala. Apr. 21, 2010); Lawrence v. Astrue, No. 08-cv-00483-REB 2009 WL 3158149, *1 (D. Colo. Sept. 24, 2009); Ky v. Astrue, No. 08-cv-00362-REB, 2009 WL 68760 at *3 (D. Colo. Jan. 8, 2009); Casey v. Astrue, Civ. A. No. 07-0878-C 2008 WL 2509030, *4 n.3 (S. D. Ala. June 19, 2008); Bolton v. Astrue, No. 3:07-cv-612-J-HTS, 2008 WL 2038513, *4 (M. D. Fla. May 12, 2008). Thus, there is record evidence indicating that "Madden" is not a medical source at all, and that his opinion is not a medical opinion. The ALJ did not address this issue whatsoever.

The first Physical RFC Assessment form in the record opines that Plaintiff is able to perform medium level work. (R. 197-203). Dr. Goering opined that Plaintiff is able to perform only light level work (R. 205-12), and the ALJ assessed Plaintiff with the capacity for "the full range of light work." (R. 33). However, the ALJ did not distinguish between these opinions. The first paragraph quoted above mentions Dr. Goering's opinion and states that Dr. Goering "noted the following in support of his opinion," (R. 34), thus suggesting that at least that paragraph is a summary of Dr. Goering's opinion. However, a review of Dr. Goering's opinion reveals that it says nothing whatever about "a remote history of neck surgery," that Plaintiff "recently declined a CPAP or a new sleep study," or that Plaintiff "has minimal medical care or treatment." (R. 34). Rather, each of these observations appears in the discussion on page 6 of the first Physical RFC Assessment form. (R. 202) (Ex. 1F-6). The ALJ refers to "Dr. Madden" in the second paragraph quoted above, and in that, and the next two paragraphs the ALJ summarized (often nearly verbatim) the observations in the discussion on page 6 of the first Physical RFC Assessment form appearing in the record. Id.

However, in the fourth paragraph quoted above, the ALJ states the conclusion from the first Physical RFC Assessment form that "objective medical evidence indicates [Plaintiff] is capable of medium work as indicated by this RFC but he was afforded the benefit of the doubt and restricted heights and hazards including operating a motor vehicle due to the possibility of alleged sleep apnea related problems." (R. 34); compare, (R. 202). The ALJ then cites Dr. Goering's opinion, "(Exhibit 1F/9-16)" as the basis for

11

this assertion, and concludes that she "finds this opinion persuasive in light of the other evidence of record, or lack thereof." (R. 34). Moreover, the ALJ assessed an RFC for light work and stated that he accorded Dr. Goering's opinion "greatest weight." (R. 36). This creates an ambiguity which the court is unable to resolve. The ALJ confused the summary of the two Physical RFC Assessment forms, stated that she found the opinion regarding medium work "persuasive," gave "greatest weight" to Dr. Goering's opinion that Plaintiff could perform light work, and found that Plaintiff can perform the full range of light work. Yet she never explained how she weighed the opinions, and never addressed the record's suggestion that "Dr. Madden" was actually a single decisionmaker. Nonetheless, the ALJ purported to find a basis in the record to discount the treating source opinion of Dr. Appl, and the nontreating source opinion of Dr. Spencer.

> As for the opinion evidence, the undersigned considered the treating physician, Dr. Bradley Appl's opinions at Exhibit 2F and 4F and finds that they are too restrictive in light of the treating records and other evidence of record. The records clearly indicate that the claimant does not take nor is he prescribed any strong pain medications; Dr. Appl has never restricted the claimant's ability to work; and the claimant's treating neurosurgeon's physician assistant notes indicate that the claimant walks normally, there is no mention of swelling of the claimant's feet, and no mention of other problems sleep problems. The doctor's opinions are without substantial support from the other evidence of record, which obviously renders them less persuasive. (Exhibit 2F, 4F/10)
>
> In addition, the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more

12

> likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.
>
> The undersigned recognizes that there is no objective evidence of the claimant experiencing blackouts, either frequent or durational. In addition, there is no objective medical evidence to support the claimant's allegations that he needs to elevate his legs above waist level, per Dr. Appl's medical source statement. In addition, the undersigned finds that Wayne Spencer, M.D.'s medical source statement appears to be too restrictive, as well. Dr. Spencer's treatment notes from March 2008, exhibit the claimant only exhibits trace amounts of lower extremities, which is contrary to the claimant's allegations. (Exhibit 3F/13-16).
>
> The undersigned also notes that the claimant continued to drive after the last hearing. The claimant admitted that he drive one time. The record does not indicate that Dr. Appl has restricted the claimant's ability to drive. Thus, it appears that Dr. Appl does not view the claimant's alleged uncontrollable sleeping/blackouts as a severe impairment.

(R. 35-36).

Here, the ALJ discounted both physicians' opinions because they are "too restrictive," and attempted to support that finding by asserting that the record shows the claimant does not take and is not prescribed strong pain medications, that Dr. Appl has never restricted Plaintiff's work ability, and that the Plaintiff's treating neurosurgeon's physician assistant indicated that he walks normally that, there is no mention of swelling feet, and no mention of other sleep problems, and that Dr. Spencer's report only mentions trace amounts of edema in his extremities.[3] In considering Dr. Appl's opinion and Dr.

---

[3]The decision states that Dr. Spencer's report shows only "trace amounts of lower extremities," and Plaintiff asserts that this is nonsensical. The court agrees that this is nonsensical, and tends to reenforce the impression that the ALJ did not demonstrate sufficient attention to detail in considering the record. But, consideration of Dr. Spencer's report indicates that the ALJ intended to state that it only mentions trace

13

Spencer's opinion, the ALJ made no record citation other than to the opinions of the physicians. (R. 35-36). Moreover, one of those citations is erroneous in that the ALJ cited to Dr. Appl's opinion at 4F/10 (R. 35), but that exhibit is only 3 pages long. Moreover, the court is simply unable to located any records containing "the claimant's treating neurosurgeon's physician assistant notes." (R. 35). It is not the court's responsibility to find record evidence which would support the ALJ's decision, especially when the ALJ does not provide citation to that evidence. Rather, it is the ALJ's responsibility to ensure that her "decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham, 509 F.3d at 1258 (quoting Watkins, 350 F.3d at 1300).

The ALJ also speculates that Dr. Appl may have expressed "an opinion in an effort to assist a patient with whom he or she sympathizes," or "in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension." (R. 35-36). The Tenth Circuit held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician. Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987). Here, the ALJ points to no evidence in the record suggesting that Dr. Appl's opinion was given to assist his patient or to avoid

---

amounts of edema in his extremities. (R. 331).

tension, and absent such specific, individualized evidence, the ALJ's speculation may not stand.

Finally, the ALJ expressed her conclusion that Dr. Goering's opinion was worthy of "greatest weight."

> The undersigned finds that the residual functional capacity described above is supported by the evidence during the relevant time period, when considered as a whole, and especially in light of the paucity of clinical deficits noted upon physical examination, the claimant's conservative course of treatment, the claimant's lack of cooperation in prescribed treatments, and the opinion of State agency physician Emil Goering, M.D. at Exhibit 1F /9-16 that has been given greatest weight.

(R. 36). This conclusion does nothing to resolve the issues discussed above.

Remand is necessary here for the Commissioner to properly evaluate the medical opinion, clarify the ambiguities identified above, and make clear the weight accorded to each medical opinion and the reasons for that weight.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 23rd day of January 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**